**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

IRVIN FULLER                                                                            PLAINTIFF

V.                                    No. 4:20-CV-00002-JTR[1]

HELEN EVANS, Deputy,
Pulaski County Detention Center                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff Irvin Fuller ("Fuller"), who was then a pretrial detainee in the Pulaski

County Regional Detention Facility ("PCRDF"), initiated this *pro se* § 1983 action

on January 2, 2020. *Doc. 2*.[2] In his verified Complaint, he alleges that, on August

10, 2019, Defendant Sergeant Helen Evans ("Evans") violated his constitutional

rights by assigning him to a top bunk at the PCRDF, despite Fuller telling her he had

a "lower level/lower bunk pass." *Doc. 2 at 4*. According to Fuller, Evans told him

that he "did not have a lower bunk/lower level pass, so [he] could either get on a top

bunk or go to seg[regation]." *Id*. Given those options, Fuller alleges he accepted the

---

[1] By consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See Doc. 43*.

[2] On February 18, 2021, Fuller was sentenced to 180 months in the Arkansas Division of Correction ("ADC"), following convictions for Battery, Terroristic Act, and Possession of a Firearm by Certain Persons. ADC INMATE SEARCH, https://apps.ark.org/inmate_info/search.php (last visited Aug. 3, 2022). He is currently incarcerated in the ADC's Barbara Ester Unit in Pine Bluff, Arkansas. *Id.*; *Doc. 45*.

top bunk assignment. *Id*. However, around 2 a.m. on August 11, 2019, he "twisted" his ankle, while trying to get down to use the rest room. *Id*. He alleges he suffered pain and swelling from this injury, but "medical" refused to x-ray it or provide adequate medical treatment. *Id*.

On November 16, 2021, Fuller filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. *Docs. 53-55*. Evans attached to her Statement of Undisputed Facts: (1) her Affidavit (*Doc. 55-6*): (2) the Affidavit of Sergeant Evora Clark ("Clark"), the PCRDF's custodian of records (*Doc. 55-1*); (3) relevant portions of Fuller's jail file (*Doc. 55-2*); (3) Fuller's requests and grievances (*Doc. 55-3*); (4) Fuller's medical file (*Doc. 55-4*); and PCRDF Policies and Procedures (*Doc. 55-5*).

On November 18, 2021, the Court entered an Order informing Fuller of his right to file a Response to the Motion for Summary Judgment. *Doc. 56*. The Court clearly explained to Fuller that, "[a]t the summary judgment stage, a plaintiff cannot rest upon mere allegations and, instead, must meet proof with proof." *Doc. 56 at 1*. Thus, Fuller was informed that his Response to Evans's Motion for Summary Judgment "should include his legal arguments, as well as affidavits, prison records, or other evidence establishing that there is a genuine issue of material fact that must be resolved at a hearing or trial." *Id. at 1*. Additionally, the Order stated:

> [P]ursuant to Local Rule 56.1, Plaintiff must file a separate "short and concise statement of material facts as to which he contends a

2

genuine issue exists to be tried." Defendant's Statement of Undisputed Material Facts (*Doc. 55*) contains room for Plaintiff to write, below each numbered paragraph, whether he "agrees" or "disagrees" with Defendant's factual statement. **If Plaintiff disagrees, he must explain, in the provided space, why he disagrees and include a citation to the evidence he is relying on to support his version of the disputed fact.**

*Doc. 56 at 1-2* (emphasis in original).

Finally, the November 18 Order cautioned Fuller that if he failed to timely and properly file a Response and Statement of Disputed Facts, it would result in "the facts in [Evans's] Statement of Undisputed Facts being deemed undisputed by [him]." *Id. at 2*.

On December 2, 2021, Fuller filed a three page "Brief and Statement of Indisputable Material Facts." *Doc. 57*. However, none of the "indisputable facts" are supported by an Affidavit or other sworn declaration. *Id*. Thus, in resolving Evans's Motion for Summary Judgment, Fuller's only sworn or verified facts are the ones he stated in his verified Complaint. Because *none* of those facts controvert or dispute *any* of the material facts stated in Evans's Statement of Undisputed Facts, everything in Evans's Statement of Undisputed Facts is now deemed to be admitted under Rule 56(c) of the Federal Rules of Civil Procedure. *See also* Rule 56.1(c) of the Local Rules for the Eastern District of Arkansas.

## II. Discussion

### A. Undisputed Material Facts

1.  On August 10, 2019, Fuller was moved to the P-Unit in PCRDF. Evans was responsible for assigning him a specific bunk in P-Unit. *See* Evans's Statement of Undisputed Facts, *Doc. 55 at ¶ 42*; Evans Decl., *Doc. 55-6 at ¶ 2*; .

2.  Because there were no lower bunks available in P-Unit, Evans assigned Fuller to a top bunk. *Doc. 55 at ¶ 42*; *Doc. 55-6 at ¶ 3*.

3.  Fuller told Evans that he had a "bunk pass" authorizing him to be assigned a lower level/lower bunk ("LL/LB"). *Doc. 55 at ¶ 43*; *Doc. 55-6 at ¶ 4*.

4.  Evans checked the PCRDF computer system to determine if Fuller had a LL/LB pass. *Id.* LL/LB bunk passes are issued by PCRDF medical personnel. *Doc. 55 at ¶ 48*; *Doc. 55-6 at ¶ 9*.

5.  In August of 2019, PCRDF used a computer software system called "JMS." Evans searched Fuller's name, and then clicked on his name to open his booking information and determine if he had a LL/LB bunk pass. Such a LL/LB bunk pass should have "popped up" as an "alert" on the first page of Fuller's booking information when Evans clicked on his name, under the heading "Inmate Comments." *Doc. 55 at ¶¶ 44-45 & 48*; *Doc. 55-6 at ¶¶ 5-6 & 9*.

6.  On August 10, 2019, when Evans clicked on Fuller's name, there was *no* entry in the "Inmate Comments" section of Fuller's booking information. There also

4

was *not* a pop-up alert reflecting that Fuller had been designated by medical personnel to receive a LL/LB bunk pass. *Doc. 55 at ¶ 46*; *Doc. 55-6 at ¶ 7*.

7.   After being unable to locate the LL/LB bunk pass using the JMS system, Evans called PCRDF medical personnel to ask if Fuller had a LL/LB bunk pass. "PCRDF medical personnel informed [her] that [Fuller] was *not* designated as a LL/LB inmate in their system." *Doc. 55 at ¶ 50*; *Doc. 55-6 at ¶ 11* (emphasis added). Thus, before assigning Fuller to an upper bunk, on August 10, 2019, Evans had received both computer confirmation and confirmation from PCRDF medical personnel that Evans did *not* have a LL/LB bunk pass.

8.   Evans then informed Fuller that she was not going to make someone else switch bunks to accommodate him, because he was not designated for a LL/LB bunk pass in the PCRDF computer system, which she had also confirmed with PCRDF medical personnel. *Doc. 55 at ¶ 51*; *Doc. 55-6 at ¶ 12*.

9.   Evans did not believe that assigning Fuller to a top bunk was a risk to his safety because there was no documentation supporting his claim that he was issued a LL/LB bunk pass. *Doc. 55 at ¶ 52*; *Doc. 55-6 at ¶ 13*.

10.   After Fuller was assigned to a top bunk on August 10, 2019, Evans does not recall him complaining to her about this assignment, nor does she recall speaking to Fuller again. *Doc. 55 at ¶¶ 57-58*; *Doc. 55-6 at ¶¶ 18 & 19*.

11.  After Fuller injured his ankle climbing down from the top bunk, he did not: (1) inform Evans that he injured his ankle; (2) ask Evans for medical care for his ankle; or (3) inform Evans that he was being denied adequate medical care for his ankle. *Doc. 55 at ¶¶ 53-55; Doc. 55-6 at ¶¶ 14-16.*

12.  After Evans was served with the Complaint in this case, she conducted a more exhaustive search of Fuller's name in the JMS software system. This time she also checked the "Hold Comments" section of Fuller's booking information, even though it was *not* the correct location for a medical entry noting that Fuller had been issued a LL/LB bunk pass. Under the "Hold Comments" section she found an entry, dated August 6, 2019, which stated: "Per EMT Beard, lower level/lower bunk." *Doc. 55 at ¶ 47; Doc. 55-6 at ¶ 8.* Because medical personnel had erroneously made this entry in the *wrong section* of Fuller's booking information, under the "Hold Comments" instead of the "Inmate Comments," the JMS software system did *not* generate the pop-up alerting Evans that EMT Beard had issued Fuller a script for a LL/LB. *Id.*[3]

**B.  Based on the Foregoing Undisputed Material Facts Fuller Cannot Establish that Evans's Decision to Assign Him to a Top Bunk Violated His Constitutional Rights**

---

[3] According to Evans's Affidavit, this "miscommunication … [between] EMT Beard … and PCRDF medical personnel" resulted in her not knowing and being unable to locate his designation "as a lower level/lower bunk inmate," which was entered in the wrong section of Fuller's booking information. *Doc. 55-6 at ¶ 11.*

At the time Fuller alleges his constitutional rights were violated, he was a pretrial detainee in the PCRDF. The Supreme Court has held that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Therefore, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention ... the proper inquiry is whether those conditions amount to punishment of the detainee." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (citing *Bell*, 441 U.S. at 535). A detainee can establish that a governmental act is punitive in nature by demonstrating an express intent to punish or by showing "that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020).

However, when the alleged constitutional violation turns on "the governmental duty to protect" the pretrial detainee, the proper inquiry becomes whether the alleged conduct rose to the level of "deliberate indifference." *Butler*, 465 F.3d at 344-45 ("deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety"). Thus, to prevail on his failure to protect claim against Evans, Fuller must show that: (1) objectively, Evans's

7

decision to assign Fuller a top bunk placed him in substantial risk of serious harm; and (2) subjectively, Evans *knew* of that risk and was "deliberately indifferent" to it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it. *Id. at 844-45.*

Here, the undisputed facts establish that, at the time Evans assigned Fuller to a top bunk: (1) no lower level bunks were available in P-Unit (*Doc. 55 at ¶ 42*; *Doc. 55-6 at ¶ 3*); (2) when Fuller told her he had a LL/LB pass, Evans checked the PCRDF computer system and called PCRDF medical personnel to verify whether he had been issued a LL/LB pass and both of those sources *confirmed* he was *not* entitled to be assigned a LL/LB for medical reasons (*Doc. 55 at ¶¶ 43 & 50-51*; *Doc. 55-6 at ¶¶ 4 & 11-12*); and (3) only after making these inquiries and discovering that Fuller did *not* have an LL/LB bunk pass did Evans assign Fuller to a top bunk. *Id.* Suffice it to say, nothing about these undisputed facts suggest that Evans: (1) knew anything about Fuller's need for a LL/LB; (2) acted with "deliberate indifference" in assigning Fuller to a top bunk; or (3) was aware that doing so placed Fuller at any substantial risk of serious harm. *Doc. 55 at ¶ 52*; *Doc. 55-6 at ¶ 13*.

Accordingly, Evans's Motion for Summary Judgment is granted on Fuller's failure to protect claim arising from being assigned a top bunk in P-Unit.

8

**C. Based on the Undisputed Material Facts Fuller Cannot Establish that Evans Was in Any Way Responsible for the Allegedly Inadequate Medical Care He Received for His Ankle Injury**

Fuller also alleges that, after he injured his ankle, he was not provided constitutionally adequate medical care for his injury. *Doc. 2 at 4*. However, Evans—the sole Defendant in this case—is *not* a medical provider, and the undisputed facts establish that she was *not aware* of Fuller's ankle injury or his need for medical care. *Doc. 55 at ¶¶ 53-55*; *Doc. 55-6 at ¶¶ 14-16*. Therefore, as a matter of law, Evans cannot be held liable for Fuller's allegedly inadequate medical care. *Smith v. Clarke*, 458 F.3d 720, 723 (8th Cir. 2006) (prison official cannot be held liable under § 1983 where he was not personally aware of prisoner's health problems or his medical treatment).

Accordingly, Evans's Motion for Summary Judgment is granted on Fuller's claim that he received inadequate medical care for his ankle injury.

**D. Fuller's Official Capacity Claims Fail as a Matter of Law**

In his Complaint, Fuller sues Evans in both her individual and official capacities. *Doc. 2 at 2*. Fuller's "official capacity" claims against Evans must be construed as claims against her employer, Pulaski County, which can only be held liable if PCRDF *policies, customs, and practices* caused Fuller's injury. *Brewington v. Keener*, 902 F.3d 796, 800-02 (8th Cir. 2018); *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699-700 (8th Cir. 2016). Because Fuller's pleadings contain

no allegations supporting an official capacity claim, Evans, as a matter of law, cannot be held liable in her official capacity.

Accordingly, Evans's Motion for Summary Judgment is granted on Fuller's official capacity claims against her.

### III. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Evans's Motion for Summary Judgment (*Doc. 53*) is GRANTED and Fuller's Complaint is DISMISSED, WITH PREJUDICE.

2. Fuller's pending Motion for Order (*Doc. 58*) and Motion for Hearing (*Doc. 59*), which seek to keep this case open and set for trial, are both DENIED, as moot.

DATED this 9th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE